IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMBER SIDZYIK,<br><br>Plaintiff,<br><br>vs.<br><br>CLARKSON COLLEGE,<br><br>Defendant. | Case No. _____<br><br><br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW the Plaintiff, by and through her attorneys, and for her cause of action against the Defendant hereby states the following:

## INTRODUCTION

1. This is a civil rights and contract action brought under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181–12189; and Nebraska common law, for breach of contract.

2. Plaintiff, a qualified individual with a learning disability, was denied reasonable academic accommodation by Defendant, a private college that receives federal financial assistance and is subject to the above statutes.

3. Defendant's actions caused Plaintiff to suffer academic penalties, emotional distress, and loss of educational opportunity. Plaintiff seeks injunctive relief, compensatory damages, attorneys' fees, and other appropriate relief.

1

## PARTIES-VENUE-JURISDICTION

4. Plaintiff Amber Sidzyik is a resident of Papillion, Sarpy County, Nebraska, and was enrolled as a student at Defendant's institution during the relevant time period.

5. At all times relevant, Plaintiff had one or more disabilities, including but not limited to post traumatic stress disorder (PTSD), which substantially limited one or more major life activities, including but not limited to reading, concentrating, and learning.

6. Defendant Clarkson College is a Nebraska non-profit corporation authorized to conduct business as private college in Nebraska, and at all times relevant had its principal office in Omaha, Douglas County, Nebraska. During all times relevant, Clarkson College received federal financial assistance and operated a place of public accommodation under federal law.

7. This Court has original jurisdiction over the claims arising under Federal law and concurrent jurisdiction over the state law claims. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and 29 U.S.C. § 794a(a)(2).

8. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. §1367(a).

9. Venue is proper in this District under 28 U.S.C. §§1391(b) and (c).

## FACTUAL BACKGROUND

10. In January 2023, Plaintiff started the Doctor of Nursing Practice-Nurse Anesthesia program offered by Defendant. One of the requirements of Defendant's program was to attain a grade of 83% or higher in each of Plaintiff's courses.

11. Upon enrolling in her program of study, Plaintiff disclosed her disabilities to Defendant's Disability Services Office and provided all required documentation from a qualified healthcare provider. Through her compliance with Defendant's policies and procedures, on or about November 30, 2023, Plaintiff was approved for disability accommodations by Defendant.

12. Plaintiff's approved reasonable accommodation included:

    a. Extended exam/quiz/practical time at 150% (time and half) of what was given non-disabled students;

    b. Reduced distraction space for testing; and,

    c. Flexibility of deadlines.

13. For the spring semester of 2024, Plaintiff was enrolled in AN 877.01 Advanced Pharmacology II, which was a required course in her program and was taught by Dr. Sara Franco.

14. On April 19, 2024, Plaintiff requested that she be given extra time on her final exam pursuant to her approved disability accommodation. Ms. Franco denied Plaintiff's request, claiming that after consulting Dr. Rochleau, Plaintiff's disability accommodation was not an allowance for an open book exam.

15. Plaintiff took her final exam on April 22, 2024, and Defendant did not provide her with extended exam time at 150% of what was given to non-disabled students for the same exam. As a result, Plaintiff scored 99/150 (66%) on her exam, and was subsequently notified, on April 29, 2024, that she was being removed from the program because her final grade in the course was 76.67%-- which was below the required 83% to remain in good standing.

16. Immediately after the exam, Plaintiff contacted Dr. Franco to express the difficulty she had with taking the exam in the amount of time she was given.

17. Two days later, on April 25, 2024, Dr. Franco told Plaintiff that she was waiting to hear back from Dr. Rochleau and would be in touch. Plaintiff sent a message to Dr. Rochleau asking to talk, and they scheduled a call for the next day.

18. On April 25, 2024, Plaintiff also emailed a copy of her disability accommodations to Alana Willand, Defendant's Senior Academic Compliance Coordinator, and asked if what she was told about not being allowed to have additional time for "open book" exams was true. Ms. Willand responded to Plaintiff that she would investigate the matter further.

19. Early morning of April 29, 2024, Ms. Willand emailed Plaintiff to let her know that she didn't find anything in Defendant's policy regarding accommodation that would restrict her testing accommodations for open book exams. Ms. Willand suggested that Plaintiff review the course syllabus and then give her a call.

20. Late morning of April 29, 2024, Plaintiff met with Dr. Rochleau, Dr. Franco and two other professors. During the meeting Plaintiff explained that her accommodations were denied, and that her exam score was impacted by not receiving what was required under the school policy and the law. Dr. Rochleau told Plaintiff that the "COA" allows for 1 minute per question, and that for 73 questions, the entire class should have only been give 73 minutes to complete the exam. Dr. Rochleau concluded that all students were accommodated with extra time when they were given 120 minutes, and therefore Plaintiff's needs were met. Plaintiff pointed out that her accommodation was to be given 150% of what non-disabled students were given. Dr. Rochleau said that she would write a letter saying that all students received accommodation. The meeting ended with Plaintiff being told that since her course grade fell below 83%, she was not allowed to continue in the program.

21. On May 1, 2024, Plaintiff requested a meeting with Ms. Willand, and they met by Zoom on May 2, 2024. Ms. Willand requested a timeline of events from Plaintiff, which was provided by Plaintiff shortly after the meeting. Ms. Willand told Plaintiff that she would look into the matter further and contact her with next steps.

22. On May 3, 2024, Plaintiff was encouraged by the Registrar's Office to file a Petition for Reconsideration as soon as possible.

23. On May 5, 2024, Ms. Willand confirmed for Plaintiff that Dr. Layna Himmelberg, Vice President of Academic Affairs also advised that Plaintiff begin the process of petitioning for reconsideration.

24. On or about May 6, 2024, Plaintiff filed a Petition for Reconsideration with Dr. Franco.

25. On or about May 7, 2024, Dr. Franco denied Plaintiff's Petition for Reconsideration.

26. On May 13, 2024, Plaintiff received notice from the Registrar's Office that she would be permitted to file a second petition for reconsideration to the next level of authority, Dr. Rochleau and Jade Liles, Vice President of Administrative Services. That same day, Plaintiff filed her Second Petition for Reconsideration.

27. At 7:36 P.M. that same day, Plaintiff received a text message from Dr. Rochleau that her Second Petition for Reconsideration was approved and that she would be given a new final exam on May 15, 2024. Plaintiff was informed that the new exam would be comparable to the previous exam, that she would be given 180 minutes to complete 73 questions and that it would be "open note open book."

28. The morning of the new exam, on May 15, 2024, Plaintiff discovered that she was not being given the standard 15-minute time period before the exam started to set up her webcam and lockdown their browser as required. In the minutes right before the exam went live, Plaintiff had to frantically text Dr.

Rochleau and Dr. Franco to get the issue resolved. Ultimately, after some back and forth, Dr. Franco agreed to add 10 minutes to the test.

29. Immediately after completing the test, Plaintiff felt that the new exam was much harder than the first and reached out to Dr. Franco to find out if she was going to hand grade any of the questions. Dr. Franco responded that only one question was given partial credit, and Plaintiff asked if she was able to review the test questions. Dr. Franco opened the test up for Plaintiff's review and informed Plaintiff that she scored 81.5%. Plaintiff expressed her disappointment and Dr. Franco offered to take a look at the questions Plaintiff missed.

30. After reviewing her test, Plaintiff asked Dr. Franco if she could remediate the exam (as has been done in the past) or review all of her tests for any missed points because she was so close to an 83%. Dr. Franco responded that she had reviewed the score to make sure all points were awarded, and that Dr. Rochleau would be in touch to discuss it further with Plaintiff.

31. On May 16, 2024, Plaintiff filed a Petition for Reconsideration to Dr. Franco outlining several instances during the semester where she believed a total of 13 points were missing from her exams, that some of those points were given to non-disabled students, and that Plaintiff only needed 8 total points to pass with an 83%.

32. On May 17, 2024, Plaintiff emailed Ms. Willand asking who she should speak with concerning student rights and policies. Plaintiff explained that her new

exam was more difficult and that there were some points missing that would have made the difference in her receiving a passing grade.

33. On May 18, 2024, Plaintiff received an email from Dr. Rochleau asking if she would agree to meet with her and Dr. Himmelberg. Plaintiff agreed to meet and asked for more information about the agenda of the proposed meeting. Dr. Rochleau responded that the meeting would be about Plaintiff request to speak to someone about the missing grade points in AN 877.

34. On May 19, 2024, Plaintiff asked that all of her exams in AN 877 be opened for review prior to their meeting so that she could be prepared for their meeting. Plaintiff did not receive a response before the meeting.

35. On May 21, 2024, Plaintiff meet with Dr. Rochleau and Dr. Himmelberg. They discussed the inconsistency in points being awarded among the tests and the resulting lack of fairness and inequity. Plaintiff demonstrated a few inconsistencies that she had raised with Dr. Franco and expressed that she would be able to demonstrate others if she was given access to the tests as requested. Dr. Rochleau told Plaintiff that she would review the tests alone before agreeing to let anyone else see them, and that the tests were college property so Plaintiff couldn't see them after being dismissed from the program. Dr. Rochleau also wanted Plaintiff to know that she didn't have the authority to change any of Plaintiff's grades, and in response, Dr. Himmelberg offered to review the tests with Dr. Rochleau.

36. On May 23, 2024, Plaintiff second Petition for Reconsideration was denied by Dr. Franco.

37. On or about May 23, 2024, Dr. Rochleau told Plaintiff that she did not personally believe in disability accommodations.

38. On May 23, 2024, Plaintiff meet with Dr. Franco, Dr. Rochleau and Dr. Himmelberg with an agenda to review all of the exams and discuss the missing grade points. Dr. Franco admitted that her previous statements on both of her denials of Plaintiff's Petitions for Review were inaccurate. In explaining her errors, it was discussed whether Plaintiff's score was adjusted in the way that Dr. Franco was recommending, all the students' scores would need to be lowered to be "consistent" and that one other student (who was not disabled) would fall below the 83% threshold. To the best of Plaintiff's knowledge, none of the other students scores were lowered and the non-disabled student was not released from the program. Dr. Rochleau ended the conversation by saying that Plaintiff score would remain at 82.3% and she would remain dismissed.

39. After the meeting on May 23, 2024, several of Plaintiff's classmates inquired with her if they could send screen shots of the Canvas notifications showing the points they had added back into their tests after the fact. The classmates told Plaintiff that some of them had up to 10 points added to their exam scores after the fact as result of statistical analysis by Dr. Franco when more than 50% of the class missed a question. Plaintiff was excluded from the opportunity

9

to benefit from said statistical analysis on her new exam because she was the only one taking it.

40. After speaking with her classmates, Plaintiff emailed Dr. Rochleau to ask if her classmates could submit their screen shots showing the extra points added to their exams to help illustrate Plaintiff's concerns about inequity. Fearing for her classmates, Plaintiff also asked if the classmates would suffer no repercussions in doing so.

41. On May 29, 2024, Dr. Rochleau responded to Plaintiff's request about the additional evidence from her classmates with, "I would advise against doing this at this time. I'm not sure what it exactly is."

42. On May 29, 2024, Plaintiff submitted her second Petition for Reconsideration to Dr. Rochleau.

43. On May 30, 2024, Plaintiff's second Petition for Reconsideration was denied by Dr. Rochleau.

44. On June 3, 2024, Plaintiff submitted her final level Petition for Reconsideration to Dr. Himmelberg.

45. On June 10, 2024, Plaintiff's final level Petition for Reconsideration was denied by Dr. Himmelberg.

46. On June 11, 2024, Plaintiff was advised by the Registrar's Office to contact Dr. Himmelberg about what the timeframe was to file a grievance. Plaintiff emailed Dr. Himmelberg, and the response was that Plaintiff could submit a

grievance under SW-14 anytime, but the decisions made other petitions were final.

47. On June 11, 2024, Plaintiff was directed by the Registrar's Office to contact Dr. Kathryn Onorato, Academic Success Administrator Student Life/Academic Support, for assistance on locating relevant policies and procedures for her grievance. Plaintiff emailed Dr. Onorato that same day seeking her assistance.

48. On June 12, 2024, Dr. Onorato told Plaintiff, "Unfortunately, I will not be able to meet with your regarding this issue at this point in time."

49. On July 24, 2024, Plaintiff filed a grievance in accordance with Defendant's policy.

50. On August 5, 2024, Plaintiff received a response from Dr. Himmelberg that Plaintiff's complaints were not subject to the grievance policy and no further action was taken.

51. Defendant's actions and wrongful dismissal of Plaintiff from her program of study violated its legal obligations under federal law and its own written policies and procedures regarding students with disabilities. As a result of Defendant's failure to accommodate Plaintiff, disparate treatment of Plaintiff compared with non-disabled students and retaliation against Plaintiff for complaining about Defendant's disability discrimination, Plaintiff experienced academic harm, emotional distress, and loss of educational access. Plaintiff also suffered monetary loss of over $116,000 in student loans incurred during

the 16 months that she invested in Defendant's Doctor of Nursing Practice-Nurse Anesthesia program.

## COUNT I

### Violations of Section 504 of the Rehabilitation Act (29 U.S.C. §794)

52. Plaintiff hereby incorporates and alleges paragraphs 1 through 51 as if fully set forth herein.

53. Plaintiff is an individual with a disability as defined by the Rehabilitation Act and was otherwise qualified to participate in Defendant's educational programs.

54. Defendant receives federal financial assistance and is subject to the Rehabilitation Act.

55. Defendant discriminated against Plaintiff solely by reason of her disability in the following ways:

   a. By failing to provide reasonable accommodations;

   b. By treating non-disabled students more favorably than Plaintiff because of her disability in grading her exams;

   c. By treating non-disabled students more favorably than Plaintiff because of her disability when applying Defendant's policies and procedures; and,

   d. By treating non-disabled students more favorably than Plaintiff because of her disability in dismissing her from her program.

56. Defendant retaliated against Plaintiff for engaging in the protected activities of requesting disability accommodations and internally complaining of harassment, discrimination, and retaliation. Defendant's retaliation included giving Plaintiff a more difficult second exam, grading Plaintiff more harshly on her second final exam, not including grade points that Plaintiff earned on both of her final exams, denying all of Plaintiff's Petitions for Reconsideration and failing to reinstate Plaintiff to her program.

57. Plaintiff suffered damages as a direct and proximate result of Defendant's failure.

## COUNT II

### Violation of Title III of the ADA (42 USC §12181-12189)

58. Plaintiff hereby incorporates and alleges paragraphs 1 through 57 as if fully set forth herein.

59. Defendant operates a place of public accommodation under 42 U.S.C. §12181(7)(J).

60. Plaintiff is an individual with a disability under 42 U.S.C. § 12102(1)(A) and § 12102(2)(A), which includes mental impairments that substantially limit major life activities like learning, reading, and concentrating.

61. Defendant failed to make reasonable modifications in policies, practices, and procedures as required by 42 U.S.C. § 12182(b)(2)(A)(ii) and failed to ensure effective communication as required by 42 U.S.C. § 12182(b)(2)(A)(iii).

62. Plaintiff seeks reinstatement to her program and other such injunctive relief that the Court deems appropriate, and a reasonable amount of attorneys' fees. *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002).

## COUNT III

### Breach of Contract (Nebraska Common Law)

63. Plaintiff hereby incorporates and alleges paragraphs 1 through 62 as if fully set forth herein and states:

64. A contractual relationship existed between Plaintiff and Defendant, arising from Plaintiff's enrollment, tuition payments, and the Defendant's policies and procedures regarding accommodations for students with disabilities.

65. Nebraska courts recognize that the relationship between a private college and a student is contractual in nature. *Knapp v. Northwestern Univ.*, 101 F.3d 473, 481 (7th Cir. 1996) (applying general contract law to student-university relationship); see also *Freier v. Independent Sch. Dist. No. 197*, 356 F. Supp. 2d 1033, 1049 (D. Minn. 2005) (applying contract principles to education-related claims).

66. Defendant's disability services policy and student handbook created enforceable expectations that reasonable accommodation would be provided.

67. Defendant failed to follow its own policies and failed to provide the agreed-upon accommodations.

68. As a result of Defendant's breach of their contract, Plaintiff suffered academic and financial harm and emotional distress.

## DAMAGES

69. Plaintiff hereby incorporates by reference paragraphs 1 through 68 and states:

70. As a result of Defendant's wrongful conduct, discrimination, retaliation, and breach of contract, Plaintiff has suffered damages and seeks the following relief:

    a. Injunctive relief in the form of reinstatement to her program of study with her reasonable disability accommodations;

    b. Alternatively, to reinstatement, repayment of tuition and related student loans and interest accumulated;

    c. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

    d. Attorney's fees, expert witness fees, and other reasonable costs; and,

    e. Pre-judgment and post judgment interest.

    WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for all her general, special, and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

    Plaintiff demands a trial by jury.

Dated: November 11, 2025.

                                            AMBER SIDZYIK, Plaintiff

                BY:    s/ Jennifer Turco Meyer
                         Jennifer Turco Meyer, 23760
                         Turco Meyer Law, LLC
                         4309 South 174th Avenue
                         Omaha, Nebraska 68135
                         P: (402) 577-0252
                         jennifer@turcomeyer.law
                         Attorney for Plaintiff